# The Law Offices of Jason Goldman

275 Madison Avenue, 35th Floor
New York, New York 10016
www.jasongoldmanlaw.com

Jason Goldman, Esq.
Principal Attorney
Admitted in NY & NJ

p. 212.466.6617
f. 212.931.6328
e. jg@jasongoldmanlaw.com

January 8, 2024

**BY ECF:**
Hon. Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas St.
White Plains, NY 10601-4150

    Re:    *United States v. Adam Belardino*, **22 Cr. 233 (KMK)**

Dear Judge Karas:

### A.    INTRODUCTION

This letter is submitted on behalf of Adam Belardino in support of his motion for a reduction of his sentence pursuant to USSG § 4C1.1 and 18 U.S.C. § 3582(c)(2). For the reasons set forth below, this Court should re-sentence Mr. Belardino in accordance with USSG § 4C1.1 by reducing his final Offense Level from 24 to 22.

As it pertains to this matter, Mr. Belardino entered into a plea agreement whereby his applicable guidelines offense level, after all enhancements and acceptance points, was 24. With a criminal history category of I, Mr. Belardino's resulting guidelines range was 51 to 63 months' imprisonment, for which was sentenced to 42 months'. Mr. Belardino self-surrendered on June 9, 2023 to begin serving his prison sentence. With this motion, Mr. Belardino respectfully requests that he be re-sentenced to 41 months' imprisonment or less pursuant to both the newly enacted USSG § 4C1.1 and the 18 U.S.C. § 3553 factors from his original sentencing, which are summarized herein.

### B.    APPLICABLE LEGAL STANDARD

Mr. Belardino moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2) and the newly enacted USSG § 4C1.1. Now known as the "zero-point offender reduction," §

# Jason Goldman, Esq.

Hon. Kenneth M. Karas
United States District Judge
January 8, 2024
Page 2

4C1.1 is a newly promulgated guideline which, under certain circumstances, grants a defendant a two-level reduction if the defendant meets all of the following criteria:

> (1) the defendant did not receive any criminal history points from Chapter Four, Part A;
>
> (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);
>
> (3) the defendant did not use violence or credible threats of violence in connection with the offense;
>
> (4) the offense did not result in death or serious bodily injury;
>
> (5) the instant offense of conviction is not a sex offense;
>
> (6) the defendant did not personally cause substantial financial hardship;
>
> (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
>
> (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
>
> (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848[.]

*See* USSG § 4C1.1. As detailed *infra*, Mr. Belardino satisfies each of these ten criteria.

The United States Sentencing Commission's 2023 Amendments in Brief set forth the rational for adopting this new guideline, stating:

# Jason Goldman, Esq.

Hon. Kenneth M. Karas
United States District Judge
January 8, 2024
Page 3

> The new § 4C1.1 provides a targeted decrease of two levels from the offense level determined under Chapters Two and Three for offenders who did not receive any criminal history points under Chapter Four, Part A and whose instant offense did not involve specified aggravating factors. The eligibility criteria is finely tailored—excluding offenders from eligibility based upon offense seriousness and aggravating factors....
>
> The amendment also implements Congress's directive at 28 U.S.C. § 994(j) that the Commission ensure the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense. The Commission determined that the revised commentary fulfills Congress's intent in promulgating section 994(j) while providing appropriate limitations and guidance through reliance on the criteria set forth in new § 4C1.1 and the specific statutory language set forth in section 994(j).
>
> The amendment also considers the Commission's extensive recidivism research and feedback from the district courts—as noted by the consistently high rate of below-range sentences citing criminal history issues. The Commission believes these changes will strengthen the overall sentencing guidelines system.

*See* USSC 2023 Amendments in Brief.[1]

The United States Sentencing Commission enacted § 4C1.1 on April 27, 2023 formally came into effect on November 1, 2023. The Commission also directed that as of February 1, 2024, § 4C1.1 will apply retroactively.[2] By statute, however, a federal court may apply § 4C1.1,

---

[1] *See* https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_821.pdf.

[2] *See* USSC August 24, 2023 News Release, *available at* www.ussc.gov/about/news/press-releases/august-24-2023. Requiring Mr. Belardino to wait until the formalistic retroactive application of § 4C1.1 before granting the instant motion would

# Jason Goldman, Esq.

Hon. Kenneth M. Karas
United States District Judge
January 8, 2024
Page 4

notwithstanding the Commission's retroactive date of February 1, 2024. To be sure, 18 U.S.C. § 3582(c)(2) states that:

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

As the Supreme Court has stated, Section 3582(c)(2),

> establishes an exception to the general rule of finality 'in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)' and made retroactive pursuant to [28 U.S.C.] § 994(u).

*See Dillon v. United States*, 560 U.S. 817, 824-25 (2010). Indeed, under § 3582(c)(2), "courts have authority ... to vary from the revised Guidelines range consistent with [18 U.S.C.] § 3553(a)." *Id.* at 825 (*citing Kimbrough v. United States*, 552 U.S. 85, 101 (2007)). Respectfully, as detailed *infra*, the Court should deploy this statutory authority and re-sentence Belardino accordingly.

### C. MR. BELARDINO'S MOTION SHOULD BE GRANTED

#### i. *Mr. Belardino Satifies § 4C1.1*

*First*, Mr. Belardino satisfies the ten conditions set forth in § 4C1.1(a). In the interest of brevity, we will not belabor the point as to conditions 1-5 and 7-10 individually.

As it relates to condition 6, 4C1.1(a)(6) requires that "the defendant did not personally cause substantial financial hardship." Notably, "[i]n determining whether the defendant's acts or

---

potentially preclude relief.

# Jason Goldman, Esq.

Hon. Kenneth M. Karas
United States District Judge
January 8, 2024
Page 5

omissions resulted in 'substantial financial hardship' to a victim, the court shall consider, among other things, the non-exhaustive list of factors provided in Application Note 4(F) of the Commentary to § 2B1.1." *See* USSG § 4C1.1(b)(3); *see also* Commentary 1 to § 4C1.1 (application of (a)(6) "is to be determined *independently* of the application of subsection (b)(2) of § 2B1.1 (Theft, Property Destruction, and Fraud")) (emphasis supplied). Hence, despite the fact that Mr. Belardino's pre-sentencing report and guidelines calculation at sentencing included a two-point enhancement pursuant to USSG § 2B1.1(b)(2)(A)(iii), the Court now, pursuant to § 4C1.1, is instructed to now make an independent determination concerning this condition and has the discretion and authority to find that Mr. Belardino satisfies subsection (a)(6) for the purposes of this reduction motion. Further, while the above-mentioned guidance is provided for an independent analysis, a precise reading of § 4C1.1(a)(6) itself *does not explicitly state* that a § 2B1.1(b)(2) enhancement is a bar to satisfying this condition.

In turn, Application Note 4(F) of the Commentary to § 2B1.1 states that, in determining whether the offense resulted in substantial financial hardship to a victim, the court shall consider, among other factors, whether the offense resulted in the victim:

> (i) becoming insolvent;
> (ii) filing for bankruptcy under the Bankruptcy Code (title 11, United States Code);
> (iii) suffering substantial loss of a retirement, education, or other savings or investment fund;
> (iv) making substantial changes to his or her employment, such as postponing his or her retirement plans;
> (v) making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and
> (vi) suffering substantial harm to his or her ability to obtain credit.

*See* USSG § 2B1.1.

A closer look at Mr. Belardino's matter, as well as a purview of comparable cases, counsels in favor of finding that he satisfies this condition. While the Court is aware, it is worth reemphasizing here that Mr. Belardino paid back the following amounts to the following individuals and companies, *prior to his sentencing*:

> Jane McDermott: **$313,998.00**;
> Gina Giles: **$1,859.65**;
> Gianfranco Lamarca: **$1,237.50**;
> Anya Tyutyunik: **$3,412.52**;

# Jason Goldman, Esq.

Hon. Kenneth M. Karas
United States District Judge
January 8, 2024
Page 6

>	Elliot Warren: **$1,495.00**;
>	Penn Mutual: **$64,748.50**;
>	National Life: **$64,748.50**.

Mr. Belardino completed his restitution payments to all the individual victims, including a substantial portion of the restitution owed to the insurance companies in this case, at a grand total of **$451,499.67**. This was an obligation that Mr. Belardino prioritized during his rehabilitation and culminated only after months of diligence and committed efforts. Despite Mr. Belardino's income stream and previous business relationships ceasing to exist following his arrest, coupled with his inability to obtain any meaningful employment, Mr. Belardino made it his life's mission to make the victims in his case whole again to the best of his ability which is something to be acknowledged, especially when making the independent analysis required by § 4C1.1.

Moreover, some similarly situated defendants have been granted a sentence reduction pursuant to USSG § 4C1.1 *despite* being convicted of financial frauds with special enhancements pursuant to § 2B1.1 (Theft, Property Destruction, and Fraud). Defendant Brian Pugh was recently granted a sentence reduction despite being convicted of a healthcare fraud whereby his restitution to victims totaled $1,470,154.45, *almost three times* that of Mr. Belardino's matter. *See United States v. Brian Pugh*, 19 Cr. 191 (RBK) (U.S.D.J.) (Dec. 11, 2023). Mr. Pugh's guidelines calculation included a two-level enhancement pursuant to 2B1.1(b)(7)(B)(i). *Id.* Defendant John Sher was also recently granted a sentence reduction despite being convicted of a financial fraud whereby his total restitution was $2,774,724.60. *See United States v. John Sher*, 19 Cr. 191 (RBK) (U.S.D.J.) (Dec. 21, 2023). He, too, was originally sentenced with a two-level enhancement pursuant to 2B1.1(b)(7). *Id.*

>	ii.	*While Incarcerated, Mr. Belardino has Continued to Demonstrate Exemplary Behavior*

*Second*, Mr. Belardino's history and his documented efforts and successes during his incarceration establish that he is precisely the category of defendant who should benefit from the underlying rational and enactment of § 4C1.1(a). Indeed, Mr. Belardino would have been an excellent candidate for this reduction application if he had been sentenced a few months later than occurred. This Court is familiar with Mr. Belardino's background and history and, if it will aid the Court, his sentencing submission and PSR can be expeditiously resubmitted.

As for his history since his incarceration, the attachments herein and his spotless record speak volumes. Immediately following his sentencing, Mr. Belardino participated in a task force that was instrumental in helping his church – Resurrection Life – win a $15,000 grant after

# Jason Goldman, Esq.

Hon. Kenneth M. Karas
United States District Judge
January 8, 2024
Page 7

sharing his sobriety story. Mr. Belardino dedicated a significant portion of his time to service-related activities, including volunteering at soup kitchens to feed New York City's underprivileged, and even got baptized by his pastor on April 2, 2023. Following his surrender, Mr. Belardino interviewed and qualified for the Resident Drug and Alcohol Program (RDAP), where he now mentors dozens of struggling addicts in the sobriety community in Lewisburg, Pennsylvania. He attends regular classes in addition to daily Alcoholics Anonymous sessions and assists those wanting to pursue a GED, an alternative to the U.S. high school diploma. Mr. Belardino has also taken numerous courses since incarcerated and continues to seek new opportunities as they arise. He has successfully earned certificates having completed courses in: Astronomy; Roman History; Public Speaking; Non-Residential Drug Abuse Program; Critical Thinking Class; Basic Economics Class; Basic Math Class; Basic Spanish Class; and Parenting 1 and Parenting 2. *See* Certificates, attached as Exhibit A.

It is also worth noting that Mr. Belardino has taken on various other jobs and initiatives while incarcerated. Since day one of his surrender – June 9, 2023 – Mr. Belardino has conducted himself with upstanding behavior among the correctional officers, and was even selected for a job to work as an assistant to the head of the prison's power plant facility at the Lewisburg penitentiary. Mr. Belardino always makes himself available, fills in for staff during the weekends, runs boiler checks and conducts chemistry lab tests to make sure the entire prison compound's water is safe and drinkable. Mr. Belardino works approximately 45 hours per week at the power plant earning $17 dollars per month.

In addition to his job at the power plant facility, Mr. Belardino also works as a Librarian at the Lewisburg penitentiary. He has successfully implemented the FPC Lewisburg AA Chapter and plays lead guitar in the church band. He has also attended every single Adult Continuing Education Class. During his incarceration, Mr. Belardino has had zero disciplinary actions against him. Lastly, but perhaps most importantly, Mr. Belardino has remained dedicated to his ongoing sobriety.

To that end, Mr. Belardino has applied himself and is continuing to work through the substance abuse treatment programs available to him, *i.e.*, the Non-Residential Drug and Alcohol Program (NRDAP), and the Residential Drug and Alcohol Program (RDAP). Indeed, he has already graduated from NRDAP. Mr. Belardino's efforts in the NRDAP/RDAP Programs are meaningful because the Sentencing Commission has found that "NRDAP Completers were 17 percent less likely to recidivate compared to eligible non-participants." *See* USSC, Recidivism

# Jason Goldman, Esq.

Hon. Kenneth M. Karas
United States District Judge
January 8, 2024
Page 8

and Federal Bureau of Prisons Programs, May 2022, at 5.[3] Even more encouraging, RDAP participants were 27% less likely to recidivate compared with eligible non-participants. *Id.*

By all objective indicators, Mr. Belardino is precisely the type of federal inmate for whom § 4C1.1 is intended to apply. As the Commission concluded when considering and enacting this guideline:

> While relatively common in federal cases, status points add less predictive value to the criminal history score than the original Commission may have expected. The Commission's recidivism studies also found that offenders with zero criminal history points were less likely to be rearrested following their release than other federal offenders .... The Commission determined that this research coupled with court feedback warranted refinements to Chapter Four.

*See* USSC 2023 Amendments in Brief at 1; *see also* USSC August 24, 2023 News Release, *citing* U.S. District Judge Carlton W. Reeves ("Our decision today is one that brings hope to thousands of currently incarcerated people and their families. We listened to a full spectrum of views and considered the full costs associated with incarceration balanced with the time needed to review petitions and prepare for successful reentry").

### D.  CONCLUSION

As Mr. Belardino falls within the purview and requirements of § 4C1.1, we respectfully request that this motion be granted and that he be re-sentenced. As discussed at length during his sentencing, Mr. Belardino has robust family support, numerous character references and has left behind three small children – ages 3, 5 and 7 – in order to serve out his prison sentence. Less than 24 hours after Mr. Belardino surrendered himself to the Bureau of Prisons, his beloved grandfather, Gerard Tutora, sadly passed away. Mr. Belardino was denied permission from the BOP to attend his grandfather's funeral despite Mr. Tutora serving as a father-like figure to Mr. Beldardino after losing his father to suicide back in 2017.

Despite these setbacks, as of September 5, 2023, Mr. Belardino completed his second full year of sobriety and continues to serve as an exemplary model inmate while incarcerated. He

---

[3] *Available at*
https://www.ussc.gov/research/research-reports/recidivism-and-federal-bureau-prisons-programs-drug-program-participants-released-2010.

# Jason Goldman, Esq.

Hon. Kenneth M. Karas
United States District Judge
January 8, 2024
Page 9

remains focused on his sobriety as evidenced by his participation in NRDAP and RDAP. These efforts will certainly reduce his risk of recidivism, as well as reduce any public safety risk once he is released. As a matter of congressional intent, the conclusions of the United States Sentencing Commission and Mr. Belardino's personal history before and during his incarceration, Mr. Belardino is not only eligible for a new sentence, but is the ideal candidate. It is respectfully requested that he be re-sentenced accordingly.

Respectfully,

*s/ jg*
Jason Goldman, Esq.

Encs.

cc: James McMahon, Esq. (*by email and ECF*)
Assistant United States Attorney

Application for a reduced sentence, pursuant to 18 U.S.C. § 3582(c), is denied. The particular application is based on Part B, Subpart 1, of Amendment 821, which adds a new guideline provision to chapter four, U.S.S.G. § 4C1.1. This new guideline authorizes a two-offense-level decrease for certain defendants who have zero criminal history points. See U.S.S.G. amend. 821 pt. B. A defendant is not eligible for this reduction if, among other things, he personally caused substantial financial hardship. § 4C1.1(a)(6); see also U.S. v. Kerns, 21-CR-115, 2024 WL 171937, at *2 (W.D.N.C. Jan. 15, 2024).

In considering a § 3582(c)(2) motion, the Court follows a two-step analysis. First, the Court must determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. See Dillon v. United States, 560 U.S. 817, 827 (2010)). Second, the Court must consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted. Id. During the second step, the Court also can consider a defendant's post-sentence conduct.

The Court finds that Mr. Belardino is not eligible for a sentence modification. As noted, a defendant who caused substantial financial hardship to at least one victim is not eligible for relief under Part B, Subpart 1 of Amendment 821. See U.S. v. Williams, 19-CR-279, 2024 WL 561119, at *2 (W.D.N.C. Feb. 12, 2024) ("Defendant received zero criminal history points, but she is not eligible for a reduction in her sentence because this Court has already found that Defendant caused her victim substantial financial hardship."). Here, Defendant pled guilty pursuant to an agreement in which he agreed that his criminal conduct caused substantial financial hardship to at least one victim. This alone settles the question, see Kerns, 2024 WL 171937, at *2 ("Here, the factual basis for the Defendant's plea makes clear that the Defendant did, in fact, personally cause substantial financial hardship to her victim."), but any doubt is removed by the impact Mr. Belardino's brazen fraud had on the victim, including forcing her from her own residence. See U.S. v. Poulson, 871 F.3d 261, 269 (3d Cir. 2017) ("When applying the term to financial hardship in the sentencing context, . . . we ought to consider not only the pecuniary value of the loss but also such intangibles as its impact on the victim."); United States v. Castaneda-Pozo, 877 F.3d 1249, 1252-53 (11th Cir. 2017) (holding that while monetary amount of losses was minimal, the defendant's actions "made his victims insecure in life's basic necessities" and thus rose to the level of substantial financial hardship). Mr. Belardino attempts to avoid this fate by pointing to the restitution payments he made. However, the Guidelines require consideration of the impact of the crime at the time it was committed. While restitution may be a mitigating factor in the context of Section 3553(a), it does not change the impact of a financial crime on the victim at the time, as in this case, eviction from a residence, or in other cases, bankruptcy. Indeed, if payment, after conviction could in effect erase this factor, then wealthy defendants could effectively buy their reduced sentence.

In any event, even if Mr. Belardino qualified for the sentence reduction, the Court will not lower the sentence. Mr. Belardino's crime was brazen, cruel, and massive and was part of a pattern of shocking greed that deeply hurt people. While the Court appreciates his remorse and his restitution payments, as well as his post-conduct efforts at rehabilitation, those factors were already considered when the Court imposed a below-Guidelines sentence of 42 months. They do not, in the Court's view, merit a further reduction, even if Mr. Belardino is eligible for only a one-month reduction. Further reducing the sentence would undermine general deterrence and respect for the law.

So Ordered  2/21/24